The next case on the calendar is Wirt v. United States. Good morning. May it please the court, my name is Lester Herzog. I represent the plaintiff's appellants. This is a civil matter involving my clients, a mother and a daughter, who were on a New York City Transit Authority bus which was rear-ended by a U.S. government vehicle. The bus driver characterized the impact as being medium. The bus driver was seated obviously in the front. My clients were seated in the back. And I think that's all I'm going to say about the facts since I know that the court is aware of the facts. The appeal basically consists of three points, albeit I denominated my briefs as five. But the main points that I would like to focus on is the district court's apparent allegation to itself of the issue of causation, which is typically an issue that's reserved for the jury as a fact determination. Here, the court decided the issue of causation in the context of whether or not my clients have met . . . What evidence do you have at all of any serious injury on Rodriguez? Let's leave Wirt aside, but there are two things here. What evidence with respect to Rodriguez do you have of any serious injury? Okay. As far as Rodriguez is concerned, it's a question of fact. I mean, clearly she was . . . Yeah, but questions of fact require evidence. Well, she initially treated, okay. She afterwards treated for a full course of physical therapy for a couple of months, okay. Then she was cut off of no fault, okay. Then she resumed treatment quite a while later, okay, but a lot of stuff has happened in between. How does any of that amount under New York law to serious injury? Because assuming that we apply New York law, which we do under the federal FDCA, and that we also apply the cutoff, which the district court found did and that Cooper doesn't apply, but assuming all of those things, then it is up to you to show some evidence of serious injury. With respect to Rodriguez, with great respect, I think I've read a thousand New York court cases, and the amount of injury that is shown doesn't amount to serious injury under New York law. The world is a different story. Your Honor, I have attached, and it's in my brief, okay, where you have the measurements of her restriction in her spine and that under New York law, under the definition of a significant limitation, okay, when you have restrictions amounting to 30 percent, this is ... Okay. We'll look it up. Go on. Okay. This is on page 32 and 33 of my reply brief, okay. You have limitations according to her physician of 33 percent, 50 percent. That certainly is significant. I would also note that under New York law, it is not necessary for the significant limitation standard for it to be permanent, okay? That's another thing that the district court stated incorrectly. So you're relying on Dr. Friedman's report from 2015? And the others. The 33 percent limitation. Yes, and the others as well, okay? And that's enough. It doesn't have to be permanent. And even in his last report, okay, there are still very significant limitations. And certainly a significant limitation gets me over the threshold and without permanence. And I would respectfully state that, you know, the fact that Dr. Gray, okay, who conducted the IME on behalf of the examination on behalf of the government of the daughter, not the mother, it's a question of fact. He found there were no limitations. My doctor finds there are limitations. And that's a question for Julie. Go on, Khabib. Okay. So the main issue over here, I believe, with regards to the mother, okay, Lord of Worth, okay, who unquestionably is the heavy injury here without any doubt, okay, the court took it upon itself to disregard, to completely disregard the conclusion that was drawn by the Wyckoff Hospital, okay, which has treated Ms. Worth for a number of years before this incident and knew her situation. In fact, the admitting doctor, Dr. Nischel, in this case, okay, also treated her in 2006 and 2007. And they had at their disposal all of the two serious operations. In the discharge summary, the conclusion is that the principal diagnosis, okay, and this is a quote, the condition that was determined after study to have been responsible for the admission to the hospital, okay, was the neck injury, okay, and post-motor vehicle accident. The chronic condition that my client has suffered since she was 8 years old but has never had to undergo surgery and was able to get married, live her life, raise a family, but never acquired any surgery, that, the chronic condition is listed as a disregarded by the district court as if it didn't exist. So when we really boil down to what the issue is, it boils down to the district court relying on an unsigned report of a radiologist who has never examined my client and who has never read any of the hundreds, probably over a thousand pages of medical documentation from Wyckoff Hospital. And I would like to also point out that in addition to that, I don't believe that the no-fault threshold applies to the United States because the United States is clearly not a covered person, okay, because it does not have to pay any no-fault benefits. That's a very interesting legal question, and you have Judge Sweet's opinion in Cooper, which is where there is no liability on the United States because the United States cannot be liable non-fault under the Federal Tort Claims Act, but then this seriousness of injury doesn't apply. Here, because the bus company is liable, it's a different situation. The argument can be made that even though the United States is not liable, there would be no recovery in New York, and therefore that same threshold must apply with respect to the government's recovery. And that, you know, it's a new legal issue. It's an interesting one, but why, if the idea is to follow New York law, which the Federal Tort Claims Act says, why isn't that a sensible solution of saying where there is non-fault liability, this only kicks in when New York would have it kick in? Okay, I would state, Your Honor, is that the notion that the United States is subject to no-fault law, which is certainly a phrase that is used in some of the cases, but being subject to means connotes an obligation. If the United States is not obligated to pay no-fault benefits, it is not subject to the benefits, but not to the obligations. But isn't, doesn't the Federal Tort Claims Act apply liability if it would exist under New York? I mean, doesn't the Federal Tort Claims Act incorporate the law of the state for saying when the federal government is liable? It does, but I don't believe that there is anything that states, okay, in fact, the case of Montgomery v. Daniels, okay, makes it very clear, okay, that this is a public policy kind of a trade-off, okay, and if an entity such as the United States does not have any of the burdens, then why should it be entitled to any of the benefits, to the threshold? Okay, it makes absolutely no sense. I do acknowledge, Your Honor, that there is a statement in some of the cases which says that the subject to if it doesn't have to pay no-fault benefits, which clearly it didn't, and which clearly, in this case, not even the transit authority paid any no-fault benefits to Ms. Wirth. They did pay no-fault benefits to the door, but not to Ms. Wirth. But in any — Can you explain to me why they didn't pay no-fault benefits to Ms. Wirth? What happened was, is that, and again, I would have to go off the record for, you know —  Okay, so if it's not a — We don't have it this morning. Can't go off the record. It is not a part of the record, but there is a reason. Okay, so the last issue that I would like to address, if I may, okay, would be the issue of summary judgment on the issue of liability. I — for the life of me, I just don't understand how the court just simply sidestepped that issue and said, well, you know, since I decided the issue of no-fault threshold that summary judgment applies to, therefore I'm not even going to address the issue of summary judgment. At least in state court that I'm familiar with, the analysis goes the other way. First, we deal with the issue of liability, and then we deal with the issue of damages, which is part of the issue of the threshold. In this instance, the court reversed it, okay, and the court essentially said, but even if I was to reach it, the court is in essence telegraphing that message. I would probably decide against granting summary judgment on liability because there are questions of fact. I would like to address that for a moment because I know that was a big thing in the U.S. government's papers. There is nothing of any substance, anything affirmative that the United States presented that contradicts or that shows affirmatively that my clients are not entitled to summary judgment on the issue of liability. My clients were passengers on the city bus, okay. There's no issue about them being comparatively culpable, and what can there be of anything of a nature stating that there shouldn't be summary judgment other than this speculation by the U.S. that perhaps they were not even on the bus because they can't produce after four years the MetroCard and because their name does not appear on the police report, which is clear that the reason why the name doesn't appear on the police report is because the bus driver told everybody to get off, and he didn't even tell the police officers that there were 40 passengers in the bus. The police report says that there's only one person in the bus, which is the bus driver. So on that basis, I would state that summary judgment should have been granted on the issue of liability. The court should have denied the U.S. government's motion on the issue of threshold, and I would also like to note that the transit authority obviously got a boon over here because they never moved on the threshold, they only moved for the summary judgment on liability, but the court gave them the threshold anyways and dismissed the case. And unless there are any questions from the court, I will- Thank you. Thank you. Good morning, your honors. May it please the court. I am Assistant United States Attorney Kathleen Mahoney from the Eastern District of New York. I represent Defendant Pele, United States of America. The district court correctly found that the United States was entitled to summary judgment, dismissing the plaintiff's tort claims because the United States demonstrated that neither plaintiff could establish that she satisfied the serious injury requirement under New York rental fault law. The Federal Torts Claim Act, which is the limited waiver of sovereign immunity that allowed plaintiffs to even bring their tort claims against the United States, provides the United States will be liable in accordance with the law of the place where the negligent act or omission occurred. Okay. Let's assume . . . Let's assume that the threshold applies. With respect to Ms. Wert, we have any number of testimony by her doctor and the hospital that this was done, that this injury, the surgery and so on, was due to this accident, not to preexisting condition. New York law is very clear that when something tends to cause something, that is a prima facie case of causation. The defendant is allowed to bring in evidence to counter that and to show that it did not in that case. Then the party can bring in evidence to show that it is a matter of doubt. This applies to causation in general and it applies specifically to the meeting of the threshold. The language of this doctor goes way beyond the kind of language that the New York Court of Appeals in a very recent case held was more than enough. Vanell's case went exactly to this same issue, Pearl versus Mayher, about just this thing. I can understand with respect to Rodriguez where it is more in doubt, but with respect to Wert, I really am puzzled. I admit I'm a tort snake and so I may know too much. Your Honor, I wasn't sure to which doctor you're referring. If you meant Dr. Friedman, the district court considered his reports and found they did not establish serious injury. Judge Chen accurately . . . That's a question of fact. No, Your Honor. What the medical records that Judge Chen went very carefully through showed was that prior to the accident, Ms. Wert had a significant, multiple perhaps, significant pre-existing degenerative conditions in her cervical spine, cervical myelopathy, which is compression of the cervical spine. Let me read you what the New York Court of Appeals said in Pearl. It said there was an 82-year-old woman with degenerative, long-standing, pre-existing, and it's very persuasive that she had all of these things, but you can't say as a matter of law that the changes didn't add to it. And that is . . . and there, what the doctors came in with was less than what this doctor did. Your Honor, the government respectfully disagrees with your reading of the record. What the record showed was that Ms. Wert had severe degenerative conditions of her cervical spine prior to the accident, that following the accident . . . Wasn't Dr. Friedman's report sufficient to come forward with evidence saying, okay, she had these . . . we all agree she had these serious conditions before the accident, but then there's an accident. The accident . . . those injuries were either exacerbated or there were new injuries resulting from the accident itself. And that's what Dr. Friedman, in essence, says, right? No, Your Honor. Dr. Friedman never even acknowledged that Ms. Wert had those pre-existing conditions. The district court actually said it was if . . . it never existed. He never . . . he didn't indicate that he reviewed any of the earlier records prior to the accident or took those pre-existing conditions into consideration. Very tellingly . . . Excuse me. Let me read you from Dr. Friedman's report. Although clearly Ms. Wert had chronic cervical and lumbar disease . . . Now, that is acknowledging that she had them. This was dramatically aggravated and exacerbated by the events. Now, you know, you cannot believe him or not, but that's a question of fact. But don't tell me he didn't say that she had pre-existing conditions, because he says so. Yes, Your Honor. But what he didn't acknowledge was that prior to the accident, Ms. Wert was being worked up for potential surgery for those pre-existing conditions. She wasn't following through on her appointments, which was pretty common throughout her medical records. Tests had actually been ordered in anticipation of that. The MRI that was done after she got to the hospital showed no significant change from the one done a year earlier, which was the one that the neurosurgeon had been looking at and talking about performing that surgery. When Ms. Wert came into the hospital, the neurosurgeon saw her two days later. And at that time, that new MRI hadn't been done. Only some x-rays had been done that showed no fractures, no acute changes. He discussed the known diagnosis of cervical myelopathy, was seen on the 2007 MRI with her, and recommended she have the surgery. She said, no, I want to go home. I'll come back. I'll follow up in the clinic. He said, okay, as long as that new MRI doesn't show any ligamentous or bony injury. And it didn't. Both the neurosurgeon and the other doctors who were treating Ms. Wert while she was in the hospital said that the new MRI didn't show any significant change, just the preexisting stenotic and degenerative conditions. In addition, the government retained an expert radiologist who reviewed all the films and gave the same opinion, that there had been no significant change. You have certainly evidence on which it could be a jury could find that there was no significant aggravation. You certainly have that evidence. That isn't the question. The question is, is there also evidence on the other side because of which, if this were New York, New York law, on the question of the threshold, this would be a jury question for the threshold. And I don't, for a moment, doubt that one could find the opposite. But the New York Court of Appeals has told us that when there is evidence of both sides on just this kind of issue, it's a jury question. Well, actually, Your Honor, it's the United States that's the defendant. It's not a jury question. It's a question for the district court judge. And in this case, the district court judge looked at all of the evidence, including the expert reports, and concluded that plaintiff evidence did not refute the conclusion of the government's expert or the statements in the plaintiff's treatment records indicating that there had been no change in her condition from before and after the accident. I guess unless the court has any questions, the government will submit the case, and thank you. Nope. Premature. But we admire your eagerness. Excuse me. May it please the court, Tim O'Shaughnessy from Transit for Transit and Lopez. First, briefly, as to the plaintiff, Rodriguez, there's no argument in the plaintiff's appellant's brief on behalf of Rodriguez concerning a serious injury. We pointed out that therefore . . . we pointed out in our Appleese brief that therefore, Plaintiff Rodriguez had abandoned her so much of her appeal as . . . That whatever opposing counsel said might have been below is abandoned before us with respect to Rodriguez. Right. Yeah. As to Wirt, an expert's opinion is only as good as the facts that it's based on. It is true that Dr. Friedman said the magic words that Judge Calabresi read to us, but the fact of the matter is that's all he said. He stated the conclusion. He never delved into the evidence or discussed any evidence of Ms. Wirt's condition being different before the accident and after the accident. If one looks at these, even we as laypeople, not health care professionals, look at the medical records from the hospital, you can't find anything like that. There's not a page in those medical records. There's not an entry in those medical records that describes something different after the accident than there was before the accident. The United States put in a sworn statement from radiologist Dr. Klein, who reviewed all of the radiological studies before and after the accident and said that there's no change before and after the accident and that all the radiology studies after the accident show no acute evidence of trauma, no evidence of acute trauma. In response to that, which established defendant's entitlement to summary judgment on the serious injury issue, plaintiff did not put in any new sworn statement by a health care professional so that we only have the previous sworn statements of Dr. Friedman and Dr. Klein's affidavit is unrebutted. I'd like to just understand your argument about why the treating physician, long-term physician, who knows her background and knows, says, Ms. Wirt had a long-standing history of prior cervical and lumbar stenosis. However, this was dramatically aggravated and exacerbated by the injuries of April. Why that should be ignored? Why you say that this person who knows her should go into chapter and verse as to what each of these specifics are and why this conclusion by somebody who has treated her should be ignored? This is an expert. Nobody denies that he was. Again, I'm not saying that ultimately you're not right. I'm just saying, why can you just say I don't believe this guy? First of all, I'm not sure Dr. Friedman was a treating physician. I think the plaintiff was sent there to make a record in this lawsuit, but he doesn't have to go into chapter and verse, but he's got to say something. He's got to point to something on some skin, but she was supposed to go for his electrodiagnostic studies. She never went, so you can't find any evidence there. He just has to point to something, but he doesn't. He just issues the conclusion that helps the plaintiff in her lawsuit. Thank you. Just very briefly. In the microphone, please. All of this conversation was focusing on Dr. Friedman. I think the focus should be on Wyckoff Hospital. They are the ones who were treating her for several years, and they are the ones who came with the final diagnosis that this was connected to the accident. No one seems to be addressing that issue. That should really close the issue because there are dozens and dozens of references to the motor vehicle accident being secondary to the injuries that she sustained. I quoted them in my briefs, but since we are talking about Dr. Friedman, I do take objection to the fact that he was mentioned as not being a treating doctor. I think that's incorrect, but let me just say this. Dr. Hamas, I'm not sure if I'm pronouncing it correctly, the second doctor that was obtained by the United States, the orthopedist, he states at the end of his report, Can you give us the page and the appendix? This is in the first volume of the appendix at page 135. It says that myelopathy is a progressive condition that can be aggravated by trauma. And then he says, in addition, MRI cord signal changes might lag behind clinical symptoms. What he's saying in essence is that, hey, the fact that it doesn't show up on the MRI may be because it's delayed. But the clinical symptoms, that is something that can be relied upon more. He admits that. And I would point out to your honors that if you look at the second volume of the appendix in the operative report of Dr. DeMattea from Wyckoff Hospital, he states that there is cervical spondylitis and a large disc herniation at C6 and C7 with spinal cord compression. There is no reference to a C6, C7 herniation in the previous MRI report. So this is definitely new. And this ties in perfectly with what Dr. Hamas, their doctor, says, that it may lag behind clinical symptoms. Dr. DeMattea saw it. The physicians at Wyckoff Hospital saw it. The MRI didn't see it yet. And that's basically the only thing which I would like to add to this discussion. Thank you very much. Thank you all. We will take the matter under submission as submitted. And that is the last case on the calendar this morning, so I'll ask the clerk to adjourn.